## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **HARVEY FRABLE and MARY FRABLE, as ADMINISTRATORS of the ESTATE OF ALEXANDRIA FRABLE,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CARBON COUNTY; MARY REINHART, RN; CORRECTIONAL OFFICER JOSEPH YATES; CORRECTIONAL OFFICER DONALD EBINGER; CORRECTIONAL OFFICER THOMAS EBINGER; CORRECTIONAL OFFICER B. KANDY; CORRECTIONAL OFFICER TASCHLER; CORRECTIONAL OFFICER BARTEK; and JOHN DOES 1-5,**<br><br>**Defendants.** | : : : : : : : : : : : : : : : : : : : : : : : | **No. 23-cv-_____**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1.      This is a civil rights survival and wrongful death action brought under

42 U.S.C. § 1983 and the Americans with Disabilities Act concerning the

defendants' deliberate indifference to the fact that decedent Alexandria Frable was

particularly vulnerable to suicide while detained at the Carbon County Correctional

Facility ("CCCF").

2.      Ms. Frable, who had no stable housing and was regularly using heroin and other opioids, was taken into CCCF custody on December 30, 2021 on a bench warrant for failure to appear at a pretrial conference relating to misdemeanor drug possession charges.

3.      From the moment of her admission, defendants were aware Ms. Frable was at risk of suicide given the combination of her mental health history, her psychiatric diagnoses, her estrangement from her family, her lack of a permanent address, her admission to CCCF during the holiday season, and her condition of detoxing from opioids upon intake.

4.      Despite that knowledge, defendants conducted no adequate mental health or suicide risk assessment, and, as a result, took no action to implement needed precautions to protect Ms. Frable.

5.      On the night of January 1-2, 2022, three days after her admission, Ms. Frable was assigned to CCCF's female housing unit, Female 1 Unit. At approximately 3:30am, Ms. Frable got out of her bed and entered the unit's bathroom. She remained there for three hours, and, during that entire time, no correctional officers working in the unit checked the bathroom or addressed Ms. Frable's absence from her bed.

6.   At the end of that three-hour period, early in the morning of January 2, 2022, another incarcerated woman found Ms. Frable hanging from a noose in the bathroom.

7.   Ms. Frable could not be revived, and she was pronounced dead at 7:27am. She was 27 years old.

8.   Plaintiffs Harvey and Mary Frable, the parents of Alexandria Frable and Co-Administrators of her estate, now seek on behalf of Ms. Frable's estate and heirs, damages for the substantial pain and suffering, the loss of life, and the financial losses caused by the defendants' conduct.

## II.  JURISDICTION

9.   This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## III.  PARTIES

10.   Decedent Alexandria Frable was at all times relevant to this Complaint a resident of Jim Thorpe, Pennsylvania. She died at the age of 27 on January 2, 2022.

11.   Plaintiffs Harvey and Mary Frable ("plaintiffs"), the parents of decedent Alexandria Frable. ("Ms. Frable"), were on December 19, 2022, appointed as the Co-Administrators of the Estate of Alexandria Frable. Plaintiffs

3

bring this action in their capacity as Administrators of the Estate and for the benefit of Ms. Frable's heirs.

12.     Defendant Carbon County is a municipal government entity in the Commonwealth of Pennsylvania, which manages and oversees the Carbon County Correctional Facility ("CCCF"), located at 331 Broad Street, Nesquehoning, PA 18240.

13.     At all times relevant to this Complaint, defendant Mary Reinhart, RN, was a nurse employed by defendant Carbon County and assigned to work at CCCF.

14.     At all times relevant to this Complaint, defendants Correctional Officer Joseph Yates, Correctional Officer Donald Ebinger, Correctional Officer Thomas Ebinger, Correctional Officer B. Kandy, Correctional Officer Taschler, and Correctional Officer Bartek were correctional officers employed by defendant Carbon County to work at CCCF.

15.     Defendant Correctional Officers John Does 1-5 were correctional officers employed by defendant Carbon County to work at CCCF whose identities are unknown to plaintiffs. Plaintiffs will seek to obtain the identities of these defendants in discovery and amend this Complaint in order to properly name them.

16.     At all times relevant to this Complaint, all defendants acted under color of state law.

17.     At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to the Estate of Alexandria Frable, and Ms. Frable's heirs.

## IV.  FACTUAL ALLEGATIONS

### A.  Defendants' Knowledge of Suicide Risk Factors and Necessary Suicide Prevention Measures

18.     It is well recognized by professionals working in the correctional environment, including all defendants in this matter, that prisoner populations include many persons with serious mental illness and specialized mental health needs.

19.     It is additionally well recognized by professionals working in the correctional environment, including all defendants in this matter, that prisoners with mental health needs are at substantial risk for attempting suicide while incarcerated.

20.     Professionals working in the correctional environment, including all defendants in this matter, are aware of the specific factors that put a prisoner at risk to attempt suicide, including, but not limited to, a history of mental illness, especially a history of serious psychiatric diagnoses including depression and Post-Traumatic Stress Disorder ("PTSD"); detoxing from drug abuse upon intake; and estrangement from loved ones.

21.     Professionals working in the correctional environment, including all defendants in this matter, are aware that the vast majority of deaths by suicide in jails and detention facilities occur within the first few weeks of a person's incarceration, and a significant percentage occur within the first week.

22.     Professionals working in the correctional environment, including all defendants in this matter, are aware of the necessity of performing a substantive, comprehensive screening of newly admitted incarcerated people for suicide risk factors.

23.     Professionals working in the correctional environment, including all defendants in this matter, are aware of several recognized methods to mitigate the risk of suicide for a prisoner who presents with significant and acute risk factors, including, but not limited to, enhanced mental health interventions, such as evaluations and treatment by a psychiatrist, continued suicide risk assessments, and placement of the prisoner on suicide watch to be supervised by trained correctional officers.

**B.  Ms. Frable's Particular Vulnerability to Suicide While Incarcerated**

24.     On December 30, 2021, between the Christmas and New Year holidays, Ms. Frable was admitted to CCCF.

25.     Ms. Frable was taken into jail custody because she failed to appear at a pretrial conference for a misdemeanor drug possession case. Her failure to appear was due to her housing instability and her substance abuse.

26.     At the time, Ms. Frable was estranged from her immediate family, including her parents and her young children.

27.     When she entered custody, Ms. Frable had been regularly using highly addictive opioids including heroin and fentanyl.

28.     At some point or points during her three days of incarceration at CCCF, Ms. Frable requested detoxification medication to treat her ongoing symptoms of withdrawal from defendant Nurse Mary Reinhart.

29.     Reinhart knew Ms. Frable was experiencing symptoms of detox and that medications were available to treat those symptoms, yet she refused to provide those medications to Ms. Frable.

30.     Other incarcerated women housed with Ms. Frable during her time in CCCF custody observed that Ms. Frable appeared skinny, unwell, and seemed "off" and disconnected.

31.     In less than three days incarcerated at CCCF, Ms. Frable experienced significant weight loss, losing approximately 17 pounds between her intake and her death.

32.     Ms. Frable was highly concerned that, without a permanent address, there was no chance she would secure her release from CCCF.

33.     In the years prior to December 2021, Ms. Frable had been incarcerated at CCCF on several occasions and the facility staff were well aware that she had a significant history of both drug use and psychiatric diagnoses, including depression, PTSD, and anxiety.

34.     Facility staff were also aware that within the previous year, Ms. Frable had reported taking several mental health medications including an antidepressant and an antipsychotic.

35.     Documentation from these recent incarcerations was included in Ms. Frable's facility records and available to all individual defendants.

36.     Shortly after her admission, at around 12pm on December 30, 2021, defendant Correctional Officer Yates asked Ms. Frable a series of cursory, subjective questions regarding her mental health. At this point, defendant Yates learned that Ms. Frable had not received psychiatric care to treat her multiple mental health diagnoses in the previous six months.

37.     Defendant Yates also learned during the course of this brief interview that Ms. Frable had recently experienced a death in her family and that she was actively detoxing from opioid use.

38.     In sum, Ms. Frable had very recently entered CCCF custody, in the midst of the holiday season, while alienated from her parents and children, without permanent housing or hope for imminent release, while experiencing withdrawal from serious opioid use, and with significant, untreated mental illness. These factors, in combination, made her particularly and evidently vulnerable to self-harm and suicide while incarcerated at CCCF.

### C.  Defendants' Failure to Conduct a Proper Suicide Risk Assessment

39.     Despite these clearly existing risk factors, defendants did not perform an adequate suicide risk assessment of Ms. Frable.

40.     Defendant Yates had been informed of the recent death in Ms. Frable's family as well as her her untreated psychiatric illness and opioid withdrawal, and, therefore, learned of Ms. Frable's vulnerability to suicide.

41.     Despite that knowledge, Yates took no further action to assess, treat, or protect her or to ensure that Ms. Frable would receive needed assessment, treatment, or protection from others.

42.     Following the interaction with defendant Yates, defendant Mary Reinhart, RN, encountered Ms. Frable for the purported purpose of a suicide risk assessment.

43.     Following that encounter, Reinhart ordered no measures to protect Ms. Frable from engaging in suicidal conduct.

44.     Reinhart claimed in an interview conducted after Ms. Frable's death that she did not believe Ms. Frable to have been at risk of suicide. Reinhart, however, prepared no documentation of any assessment or of any conclusion as to Ms. Frable's risk.

45.     Reinhart prepared no such documentation in order to cover up and conceal the fact that she was aware of Ms. Frable's particular vulnerability to suicide yet failed to act, or, alternatively, that she failed to conduct an adequate assessment.

**D. Defendants' Failure to Provide Treatment and Protections**

46.     Despite defendants' knowledge of Ms. Frable's significant risk factors and serious mental health needs, they did not initiate any precautions to attempt to mitigate them.

47.     Defendants did not ensure that Ms. Frable was treated or even evaluated by a mental health professional within the critical initial days of her incarceration, made even more critical by the time of year and Ms. Frable's personal circumstances.

48.     Defendants failed to reestablish Ms. Frable's previous psychiatric care, including mood-stabilizing medications.

49.     Defendants refused to provide Ms. Frable with medication to treat her ongoing withdrawal symptoms.

50.     Defendants did not institute any sort of heightened observation or suicide watch of Ms. Frable.

51.     Defendants failed to insulate Ms. Frable from materials that she could use to her harm herself.

### E. Defendants' Failure to Account for
### Ms. Frable's Whereabouts on January 2, 2022

52.     In addition to failing to institute appropriate assessments, treatments and protections in response to Ms. Frable's clear vulnerabilities, defendants did not implement the basic correctional precaution of ensuring that Ms. Frable's whereabouts were accounted for on the night of January 1-2, 2022.

53.     In the early morning hours of January 2, 2022, defendant D. Ebinger was assigned as the housing officer of the Female 1 Unit of CCCF, where Ms. Frable was housed.

54.     In this assignment, D. Ebinger was responsible for ensuring the safety of the incarcerated women on that unit.

55.     Defendants T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5 were correctional officers assigned to work at CCCF on January 2, 2022. Each, likewise, had a responsibility to be aware of and address events occurring in Female 1 Unit.

56.     All defendant correctional officers knew of Ms. Frable's Inmate File and the information contained therein, including details of her significant risk

factors, and were therefore aware that she was particularly vulnerable to self-harm and suicide.

57.     At 3:18am on January 2, 2022, Ms. Frable left her bed on the upstairs pod and entered the bathroom.

58.     At 3:25am, defendant D. Ebinger documented that he conducted a round of the unit, indicating that he checked each bed to make sure that each incarcerated woman housed on the unit was accounted for. As such, he was aware of Ms. Frable's absence, but he neither noted nor investigated that absence.

59.     At 3:28am, Ms. Frable left the bathroom and returned to the upstairs pod. Just seven minutes later, at 3:35am, Ms. Frable again exited the pod and returned to the bathroom.

60.     Between 3:35am and 6:22am, defendant D. Ebinger conducted five more rounds of the unit. On each such round, he noticed Ms. Frable's absence from her bed.

61.     Defendants T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5 were, likewise, aware of Ms. Frable's prolonged absence from her bed.

62.     At no point in those approximately three hours, however, did defendant D. Ebinger or any other defendant correctional officers take action to address the concerning fact that Ms. Frable was not in her assigned location.

63.     At 6:22am, another incarcerated woman found Ms. Frable hanging from a laundry bag strap attached to a hook in the ceiling of the bathroom.

64.     Ms. Frable was pronounced dead at 7:27am.

### F. The Individual Defendants' Violation of Ms. Frable's Constitutional and Federally Protected Rights and Relevant Standards of Care

65.     Defendants Reinhart, Yates, D. Ebinger, T. Ebinger, Kandy, Taschler, Bartek and Does 1-5 were, or should have been, aware of Ms. Frable's particular vulnerability to suicide.

66.     Notwithstanding their knowledge of Ms. Frable's particular vulnerability to suicide, defendants Reinhart, Yates, D. Ebinger, T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5, with deliberate indifference and in violation of relevant standards of care, failed to take actions to address Ms. Frable's vulnerability to suicide.

67.     Defendants Reinhart, Yates, D. Ebinger, T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5 failed to ensure that Ms. Frable received any mental health care upon intake at CCCF, despite her known history of psychiatric diagnoses and medication.

68.     Defendants Reinhart, Yates, D. Ebinger, T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5 failed to perform an adequate suicide risk assessment for Ms. Frable.

69.     Defendants Reinhart, Yates, D. Ebinger, T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5 failed to institute protective measures to limit Ms. Frable's risk factors, including a heightened observation or suicide watch protocol.

70.     In fact, defendants Yates, D. Ebinger, T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5 did not address that Ms. Frable was not in her bed for hours.

71.     In all respects, defendants Yates, D. Ebinger, T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5 made intentional decisions with regard to Ms. Frable's care which placed Ms. Frable at substantial risk of suffering serious harm. These defendants did not take reasonable available measures to abate that risk, even though a reasonable correctional officer and/or nurse in the circumstances would have appreciated the high degree of risk involved, thereby making the consequences of the defendants' conduct obvious.

72.     At all times relevant to this Complaint, the conduct of all defendants was in willful, reckless, and callous disregard of Ms. Frable's rights under federal and state law.

### G. Defendant Carbon County's Policies, Practices, and Failures to Train its Employees in Violation of Ms. Frable's Constitutional and Federally Protected Rights

73.     At all times relevant to this Complaint, as evidenced by the failures outlined above, defendant Carbon County, with deliberate indifference, failed to develop and implement policies, practices, and procedures to ensure that prisoners

in the position of Ms. Frable would be treated in a way that would mitigate significant risks of suicide.

74.     At all times relevant to this Complaint, as evidenced by the failures outlined above, defendant Carbon County, with deliberate indifference, failed to properly train, supervise and discipline its medical and correctional employees so as to ensure that prisoners in the position of Ms. Frable would be treated in a way that would mitigate significant risks of suicide.

75.     In particular, defendant Carbon County failed to enact policies, practices and procedures and/or ensure training regarding the need for incarcerated people, particularly those with known risk factors, to receive a timely and comprehensive suicide risk assessment performed by a qualified staff member upon intake as evidenced by the fact that defendant Yates, who is not a trained mental health professional, was left to conduct a suicide risk assessment based on subjective evaluation of pre-listed and noncomprehensive risk factors.

76.     Defendant Carbon County failed to train its correctional employees to recognize and/or properly address suicide risk factors.

77.     Additionally, defendant Carbon County failed to enact policies, practices and procedures and/or ensure training regarding the need for incarcerated people to be seen by trained mental health professionals for the purpose of, among other things, suicide risk assessment and reinstituting necessary care for

incarcerated people with untreated psychiatric illness given the added stressors of incarceration.

78.     Further, defendant Carbon County failed to enact policies, practices and procedures and/or ensure training regarding, among other things, the need for its correctional employees to ensure the safety and presence of incarcerated people under their duty of care.

79.     The risk of harm to prisoners like Ms. Frable in the absence of appropriate policies, practices, and procedures and/or appropriate training, supervision, and discipline was obvious and apparent to defendant Carbon County.

80.     Given her diagnosed mental health conditions, Ms. Frable was a qualified individual with a disability under federal law.

81.     When Ms. Frable was deprived of appropriate mental health interventions as outlined above, she was deprived of services, programs, or activities of defendant Carbon County by reason of her disability.

## H. Ms. Frable's Harms and Losses

82.     Ms. Frable's suicide was the direct and proximate result of the defendants' failures as outlined above.

83.     As a direct and proximate result of the conduct of all defendants, Ms. Frable experienced enormous physical and emotional pain and suffering.

84.     As a direct and proximate result of the conduct of all defendants, Ms. Frable was caused to lose her life and the enjoyment of her life, including complete loss of earnings and earnings capacity.

## V.  WRONGFUL DEATH AND SURVIVAL ACTIONS

85.     Plaintiffs, as Co-Administrators of the Estate of Alexandria Frable, bring this action on behalf of Ms. Frable's heirs under the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301.

86.     Ms. Frable's two children, JC (age five) and LK (age seven) are Ms. Frable's sole heirs under the Wrongful Death Act.

87.     Ms. Frable did not bring an action against defendants for damages for the injuries causing her death during her lifetime.

88.     Ms. Frable's heirs have, by reason of Ms. Frable's death, suffered pecuniary loss, and have or will incur expenses for the costs of Ms. Frable's funeral, the costs of Ms. Frable's headstone, and the costs of administering Ms. Frable's estate.

89.     Ms. Frable's heirs have, by reason of Ms. Frable's death, suffered further pecuniary loss including expected contributions and financial support from Ms. Frable for food, clothing, shelter, medical care, education, entertainment, recreation, and gifts.

90.     Plaintiffs also bring this action on behalf of the Estate of Alexandria
Frable under the Pennsylvania Survival Statute, 42 Pa. C.S. § 8302, under which
all claims Ms. Frable would have been able to bring had she survived may be
brought by Ms. Frable's estate.

91.     Ms. Frable's estate has, by reason of Ms. Frable's death, suffered
pecuniary loss, and has or will incur expenses for the costs of Ms. Frable's funeral,
the costs of Ms. Frable's headstone, and the costs of administering Ms. Frable's
estate.

92.     As a direct and proximate result of the conduct of all defendants, Ms.
Frable experienced extraordinary physical and emotional pain and suffering before
her death, and, as a result of her death, suffered the loss of the enjoyment of her
life and complete loss of earnings and earnings capacity.

93.     Plaintiffs, via this survival action, seek damages for these harms
caused to Ms. Frable.

## VI.  CLAIMS FOR RELIEF

### COUNT 1
**Plaintiff v. Defendants Reinhart, Yates, D. Ebinger,
T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5
Federal Constitutional Claims**

94.     Defendants Reinhart, Yates, D. Ebinger, T. Ebinger, Kandy, Taschler,
Bartek, and Does 1-5 were deliberately indifferent to Ms. Frable's particular
vulnerability to suicide and to her serious mental health needs, and thereby violated

Ms. Frable's right to be free from cruel and unusual punishment under the Eighth

Amendment to the United States Constitution and/or her right to due process of

law under the Fourteenth Amendment to the United States Constitution.

## COUNT 2
### Plaintiff v. Defendant Carbon County
### Federal Constitutional Claims

95.     The violations of Ms. Frable's constitutional rights under the Eighth

and /or Fourteenth Amendment to the United States Constitution, the conduct of

the individual defendants, and plaintiffs' damages were directly and proximately

caused by the actions and/or inactions of defendant Carbon County, which has,

with deliberate indifference, failed to establish policies, practices, and procedures

and/or has failed to properly train, supervise and discipline its employees regarding

the protection of suicidal prisoners and the provision of adequate mental healthcare

as outlined above.

## COUNT 3
### Plaintiff v. Defendant Carbon County
### Title II, Americans with Disabilities Act, 42 U.S.C. § 12132

96.     Ms. Frable was a qualified individual with a disability as defined

under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131.

97.     Defendant Carbon County is a public entity as defined under Title II

of the Americans with Disabilities Act, 42 U.S.C. § 12131.

98.     Defendant Carbon County, with deliberate indifference, failed to ensure the adoption of procedures and protocols to perform adequate mental health risk assessments and obtain mental health interventions for prisoners in its custody, and, as such deprived Ms. Frable of the benefits of Carbon County's services, programs, or activities on account of her disability.

**COUNT 4**
**Plaintiff v. Defendant Reinhart**
**State Law Negligence Claims**

99.     Defendant Reinhart had a duty to comply with generally accepted medical and mental health standards of care in her treatment of Ms. Frable.

100.    Defendant Reinhart violated her duty of care.

101.    Defendant Reinhart's violation of her duty of care to Ms. Frable was a direct and proximate cause and a substantial factor in bringing about plaintiffs' damages as outlined above, and, as a result, defendant Reinhart is liable to plaintiff.

## VII.  REQUESTED RELIEF

**Wherefore**, plaintiffs respectfully request:

A.      Compensatory damages as to all defendants;

B.      Punitive damages as to defendants Reinhart, Yates, D. Ebinger, T. Ebinger, Kandy, Taschler, Bartek, and Does 1-5;

C.      Reasonable attorneys' fees and costs;

D.      Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.


/s/ Grace Harris
Grace Harris
I.D. No. 328968
Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING, FEINBERG
   & LIN LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)
gharris@krlawphila.com
jfeinberg@krlawphila.com

*Counsel for Plaintiffs*